NO. _____

---

## IN THE
## UNITED STATES DISTRICT COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**ON PETITION FOR PERMISSION TO APPEAL
FROM AN ORDER GRANTING CLASS CERTIFICATION
BY THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA, FLORENCE DIVISION
HONORABLE BRUCE HOWE HENDRICKS**

**PLAINTIFF ALEXIS DEGIDIO, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED
V.
DEFENDANT CRAZY HORSE SALOON AND RESTAURANT, INC., THEE
NEW DOLLHOUSE
CASE NO.:   4:13-CV-02136**

---

**DEFENDANT'S PETITION FOR PERMISSION TO APPEAL COURT'S
ORDER GRANTING PLAINTIFF'S MOTION TO CERTIFY CLASS
PURSUANT TO F.R.C.P. 23(f)**

---

## I.

## INTRODUCTION

This case is currently before this Court due to Defendant's Notice of Appeal

of the District Court's denial of Defendant's Motion to Compel Arbitration of nine

of the FLSA Opt-ins who had signed agreements to arbitrate all disputes with

Defendant, which was filed February 1, 2017.[1]  In that same Order denying Defendant's Arbitration Motion, the Court granted Plaintiff's Motion for Rule 23 Class Certification ("Rule 23 Motion") based upon a tenuous state law claim. Defendant showed that over 95% of Plaintiff's proposed Rule 23 Class have signed arbitration agreements. Since the enforceability of the arbitration agreements and other issues addressed in the Order are determinative of whether this matter is appropriate for Rule 23 class treatment, Defendant petitions this Court for permission to appeal pursuant to Fed. R. Civ. P. 23(f).

## II. BACKGROUND

Plaintiff Alexis Degidio ("Plaintiff") filed this civil action on August 8, 2013, asserting claims against Defendant for alleged minimum wage and overtime pay violations pursuant to the Fair Labor Standards Act ("FLSA") and violations under the South Carolina Payment of Wages Act ("SCPWA") and requesting that those claims be tried by a jury.[2]  Defendant answered denying that Plaintiff was an "employee" (under either the FLSA or SCWPA) or that it had any liability.[3]  On September 30, 2015, this Court issued an Order[4] denying in substantial part Defendant's Motion for Summary Judgment, granting Plaintiff's Motion for Conditional Certification and Judicial Notice under the FLSA, and denying

---

[1] Def.'s Mt to Dismiss Claims of Opt-ins to Conditionally Certified FLSA Action and to Compel Arbitration (D.E. 153).

[2] Compl. (D.E. 1); 1st Am. Compl. (D.E. 42) at 12-17.

[3] Answer (D.E. 23); Am. Answer (D.E. 45).

[4] (Order, D.E. 116)

Plaintiff's Motion for Class Certification pursuant to Federal Rules of Civil Procedure 23 with leave to refile.[5]    The Court ruled that Plaintiff's state law claims were preempted except for Plaintiff's one claim under the SCPWA for deductions from tips.[6]    The Court expressed doubt as to whether Plaintiff had stated a claim under the SCPWA for deduction from tips because the statute only prohibited deductions from "wages."[7]    The Court invited Defendant to file a Motion to Dismiss of the SCPWA claim and indicated that if the Court determined Plaintiff had stated a claim under S.C. Code Ann. § 41-10-40 she could refile her Rule 23 Motion.[8]    Defendant filed its Motion to Dismiss and/or in the Alternative for Summary Judgment on Plaintiff's state law claim for deductions from wages and set forth its undisputed material facts.[9]    The Court denied the 12(b)(6) Motion to Dismiss, finding Plaintiff had "advanced a plausible basis for relief" and "[a]t this stage, the allegations set forth in the Complaint are sufficient to survive a motion to dismiss."[10]    The Court refused to consider or to rule upon Defendant's Motion for Summary Judgment, although Plaintiff did not dispute the material facts Defendant

---

[5] (Order, D.E. 116 at 52-53) (deciding Defendant's Motion for Summary Judgment (D.E. 102); Plaintiff's Motion for Conditional Certification and Judicial Notice under the FLSA (D.E. 70); Plaintiff's Motion for Class Certification pursuant to Federal Rules of Civil Procedure 23 (D.E. 71)).

[6] *Id.* at 9-11.

[7] *Id.* at 9-12.

[8] *Id.* at 11-12.

[9] Def.'s Mt. to Dismiss for Failure to State a Claim and/or for Summary Judgment on Plaintiff's Claim Under State Law for Deductions from Tips (D.E. 117, 117-1, 117-2.)

[10] (Order (D.E. 132) at 11.)

submitted.[11]   However, the Opinion recognized that South Carolina courts had not addressed whether tips could be included within the definition of wages under the SCPWA and that was an "uncertain[] . . . issue under South Carolina law."[12]

Defendant then filed a Motion to Certify the uncertain question -- whether tips may be considered wages under the SCPWA -- to the South Carolina Supreme Court.[13]   However, the Court denied the Motion to Certify, ruling that Defendant should have filed the Motion to Certify before the Court ruled on the Motion to Dismiss.[14] On August 11, 2016, Defendant filed a Motion to Certify Uncertain Questions of State Law Raised in Defendant's Motion for Summary Judgment, which had not yet been ruled upon.[15]   Defendant sought a ruling from the South Carolina Supreme Court on some additional uncertain questions under the SCPWA *before* the Court ruled on whether Defendant was entitled to Summary Judgment on Plaintiff's SCPWA claim, since it had been established that the facts presented in that Motion were not in dispute and uncertain legal questions remained.[16]

At present, there are fourteen Entertainers who are Opt-ins to Plaintiff's conditionally certified FLSA action, nine of which signed agreements to arbitrate

---

[11] *See id*. at 2.

[12] *Id.* at 6.

[13] Def.'s Mt. to Alter or Amend the Court's Order dated June 3, 2016, and to Certify South Carolina Payment of Wages Act Question(s) to the South Carolina Supreme Court (D.E. 133) (citing South Carolina Appellate Court Rule 244).

[14] (Order (D.E. 140) at 5.)

[15] Def.'s Mt. to Certify Uncertain Question(s) of State Law Raised in Defendant's Motion for Summary Judgment to the South Carolina Supreme Court (D.E. 146).

[16] *See id*. at 1-2.

any and all disputes with Defendant, leaving a total of just five (5) Opt-ins who did not enter into an arbitration agreement.[17]

Since the scope and nature of Plaintiff's claims depended on the resolution of the three Motions referenced above, on January 17, 2017, the Court granted the parties Joint Motion to Modify the Scheduling Order and to Stay Pretrial Deadlines until after decisions were rendered on the pending motions.[18]

On January 26, 2017, the Court ruled as follows on the three pending motions before it: (1) The Court denied Defendant's Motion to certify the additional uncertain questions related to the South Carolina law and again refused to consider Defendant's Motion for Summary Judgment on the state law claim; (2) The Court denied Defendant's Motion to Dismiss the Claims of Opt-Ins and Compel Arbitration; and (3) The Court granted Plaintiff's Motion to Certify a Class on the state law claim.[19]

On February 1, 2017, Defendant filed its Notice of Appeal of the Order denying its Motion to Compel Arbitration, pursuant to 9 U.S.C. §16(a)(1)(B).[20]

### III. SUMMARY OF FACTS

Plaintiff was an Entertainer who occasionally performed at Defendant's upscale Gentleman's Club from about July 2012 to April 2013 and performed at

---

[17] (Def.'s Memo. in Supp. of Mt to Dismiss Claims of Opt-ins to Conditionally Certified FLSA Action and to Compel Arbitration (D.E. 153-1) at 1.)

[18] (Order (D.E. 161) at 1.)

[19] (Order (D.E. 166) at 35-36, which is attached hereto as Ex. 1.)

[20] (Appellate Case No. 17-1145.)

various Adult Entertainment Clubs in South Carolina and other states from about 2004 to the spring of 2013.[21] Plaintiff, like other Entertainers, was not an employee of Defendant but was permitted to entertain there as an independent contractor.[22] She was not paid wages by the Club; rather, her earnings came directly from customers by way of fees set and charged by Plaintiff plus whatever tips she received.[23]  Plaintiff testified that she did not know how much she earned performing at Defendant's Club, but prior to entertaining at Defendant's Club she earned about $100,000.00 in 2011 as an Entertainer.[24]

Plaintiff did not work according to a schedule but was free to entertain whenever she wished at Defendant's Club or to perform other places as well.[25] The Club did not control Plaintiff as to when or how she performed, or for whom she danced.[26]  Plaintiff (like other Entertainers) was responsible for determining her own dresses, make-up, costumes, personae, stage name, and style of dancing.[27]

---

[21] Def.'s Resp. in Opp. to Plaintiff's Mt. to Certify Class (D.E. 147) at 3; Def.'s Refiled Memo. in Support of Mt. for Summ. Judg. (D.E. 102-1) at 14.

[22] Def.'s Resp. in Opp. to Plaintiff's Mt. to Certify Class (D.E. 147) at 3.

[23] *See id.*

[24] *See id.*

[25] Def.'s Resp. in Opp. to Plaintiff's Mt. to Certify Class D.E. 147 at 3-4; Def.'s Memo. in Support of Refiled Mt. for Summ. Judg. (D.E. 102-1) at 9; Def.'s Stat. of Undisputed Facts (D.E. 102-2 ¶ 15-16.

[26] D.E. 147 at 4; D.E. 102-1 at 10; Def.'s Stat. of Undisputed Facts (D.E. 102-2) ¶ 20.

[27] D.E. 147 at 3-4; D.E. 102-1 at 8-9; Def.'s Stat. of Undisputed Facts (D.E. 102-2) ¶ 13, 32-33, 37. Defendant operated an upscale Gentleman's Club with higher standards than other adult clubs in terms of the environment, services, and quality. D.E. 102-1 at 9, 13-14; Def.'s Stat. of Undisputed Facts (D.E. 102-2 ¶ 4.)

Although Plaintiff was never paid by Defendant and understood at the time that she was an independent contractor, her lawsuit claims Defendant exercised a significant degree of control over her such that she meets the definition of an employee under the FLSA and the SCPWA.[28]   Defendant disputes that she or any other Entertainer was ever subjected to the degree of control alleged by Plaintiff or otherwise treated as employees under any definition.[29]  Although the Court denied Defendant's summary judgment motion on that issue, Plaintiff did not move for summary judgment; therefore, the issue of whether she was an "employee" under the FLSA and/or the SCPWA remains a disputed issue to be tried before a jury.

About 686 Entertainers performing at the Club, currently and since mid-November 2014, have each entered into a Licensing Lease and Dispute Resolution Agreement ("Arbitration Agreement") as part of an Entertainers Information Package given to each Entertainer.[30] Each Entertainer was provided information about arbitration, Plaintiff's lawsuit, the right to opt out of the arbitration provision, and the right to consult an attorney.[31]

---

[28] Am. Complaint (D.E. 42) ¶ 23-26.

[29] D.E. 102-1 at 7-10.

[30] Def.'s Resp. in Opp. to Plaintiff's Mt. to Certify Class (D.E. 147) at 5-6. The Entertainer's Information Package for each of the nine Opt-ins was attached to Defendant's Motion to Dismiss Claims of Opt-ins to Conditionally Certified FLSA Action and to Compel Arbitration (D.E. 153-2). Thus, for the Court's convenience Defendant attaches one of those Arbitration Agreements for reference as Exhibit 2.

[31] *See id.*

## IV. LEGAL STANDARD AND GROUNDS FOR GRANTING THIS PETITION

The Fourth Circuit applies the following test to determine if a Rule 23(f) petition should be granted:

> (1) whether the certification ruling is likely dispositive of the litigation; (2) whether the district court's certification decision contains a substantial weakness; (3) whether the appeal will permit the resolution of an unsettled legal question of general importance; (4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and (5) the likelihood that future events will make appellate review more or less appropriate.

*See EQT Production Co. v. Adair*, 764 F.3d 347, 356-57 (2014) *(citing Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 144-45 (4th Cir. 2001)). Although those factors are considered "on a holistic basis," the petition should be granted "notwithstanding the other factors, '[w]here a district court's certification decision is manifestly erroneous and virtually certain to be reversed on appeal.'" *Id*. at 357 *(citing Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 144-45 (4th Cir. 2001)).

In accordance with the factors as set forth in *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138 (2001), Defendant contends that it is appropriate to grant this Petition because:

1)    The ruling on Rule 23 class certification, if not "likely dispositive of the litigation," substantially alters the nature, scope, and status of the litigation since a denial of such certification would result in just one Plaintiff and no more than five

Opt-ins under the FLSA, as opposed to 700 plus participants if the certification were granted;

2)      The Rule 23 certification decision contains substantial weaknesses, including the Court's reliance on its denial of Defendant's Motion to Compel Arbitration (which if granted would have resulted in too small of a potential number of plaintiffs to certify a class) and its denial of Defendant's Motion to certify state law questions regarding the underlying SCPWA statute (which if granted may have resolved an important unsettled legal question and resulted in neither Plaintiff nor a putative class having any legal basis for a claim);

3) The Rule 23 certification decision is based upon erroneous determinations and assumptions that will also likely impact discovery, pretrial motions, and trial such that appellate review is rendered appropriate.

**A.   The Court's grant of Rule 23 Class Certification relied upon its own erroneous ruling denying Defendant's Motion to Compel Arbitration.**

The District Court found that the resolution of the Motion to Compel Arbitration affects the Rule 23 Motion, in which Plaintiff asserted that the class satisfied the numerosity requirement because it consisted of about 722 Entertainers.[32]

Defendant presented proof that, although Plaintiff did not sign an arbitration agreement, a total of 686 Entertainers (95% of the putative class) signed arbitration

---

[32] (Order D.E. 166 at 5; Pl.'s Memo. in Support of Rule 23 Motion (D.E. 139-1) at 9-10.)

agreements with the Defendant.[33]   The Arbitration Agreement clearly indicates that
Entertainers agreed to arbitrate any and all disputes with Defendant, including those
arising before such agreements were signed, despite knowledge of Plaintiff's lawsuit
and an opportunity to opt out of the Agreement.[34] Each Entertainer who signed an
Arbitration Agreement signed a statement indicating that she had received and
understood the documents in the Arbitration Package (including the Agreement,
arbitration information, notice of Plaintiff's case, and Opt-Out Form).[35] Therefore,

---

[33] (Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147, at 11.)

[34] D.E. 147 at 11-12; Def.'s Mt. to Compel Arbitration (D.E. 153-1) at 2-4. The Arbitration Agreement reads as follows:

The Parties agree to submit any dispute (whether the dispute arose prior to or after execution of this Agreement) they are unable to resolve informally to final and binding arbitration as follows:

    i.   How this Arbitration Provision Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. Its purpose is to ensure that an arbitrator, **not** a court, will decide ***ALL*** *federal, state, statutory, and common law claims between the Parties, including, but not limited to all claims*—legal or equitable, whether based in statute, tort, contract, equity, or breach of trust—that arise out of, in connection with, or relating to this Agreement (including formation, execution, *enforcement*, interpretation, or modification), Performer's classification as an independent contractor, and *the arbitrability of any such claim, regardless of when it may have arisen,* and regardless of whether a lawsuit has been filed seeking a collective or class action, *all of which must be submitted for the arbitrator to decide in the first instance.*

D.E. 147-2 at 6 (Arbitration Agreement § 15(d)(i)) (emphasis added).

[35] (D.E. 147-2 at 11.) For instance, each Entertainer signed a statement indicating as follows:

the Arbitration Agreements signed by Entertainers are effective against any SCPWA claims, including potential claims that accrued before the Agreement was signed since its language specifically includes all such claims. The Fourth Circuit indicated in a case involving FLSA and SCPWA claims that "arbitration provisions may be retroactively applied to causes of action that accrued prior to the execution of the arbitration agreement" if the language of the agreement is broadly constructed, such as to include "*any* dispute between the parties." *Newbanks v. Cellular Sales of Knoxville, Inc.*, 548 Fed. Appx. 851, 854-55 (4th Cir. 2013) (citations and quotations omitted) (emphasis added).[36]

If Plaintiff's proposed class of 722 Entertainers is diminished by 686 Entertainers who have signed Arbitration Agreements (95% of the putative class), that would leave only 36 potential class members.[37] That small number of class members would reduce the potential pool of class members so substantially that

---

I acknowledge that I have received, read, and reviewed the Licensing Lease and Dispute Resolution Agreement with an Opt-Out Form, and understand that all claims are subject to arbitration. I have been given the About Arbitration Memo and advised that a lawsuit has been filed in the U.S. District Court of South Carolina, seeking a class and collective action against Crazy Horse Saloon and Restaurant, Inc., d/b/a Thee New Dollhouse by Alexis Degidio, Case No.: 4:13-cv-02136-RBH claiming that performers should have been paid as employees and not treated as independent contractors.

*Id.*
[36] Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 12-13.
[37] *See supra* n. 30.

Plaintiff's purported class would not satisfy the numerosity requirement of the Fourth Circuit. *See., e.g., Roman v. ESB, Inc.*, 550 F.2d 1343, 1349 (4th Cir. 1976) (refusal to certify class of fifty-five).[38]

The denial of Defendant's Motion to Compel Arbitration substantially affected the Court's Rule 23 determination of whether the numerosity requirement was met. For instance, if it had compelled Arbitration, there would only be one Plaintiff and about five opt-ins remaining in the action (as opposed to over 700) since 95% of them signed Arbitration Agreements.[39] As Defendant's appellate brief in support of its appeal of the Motion to Compel Arbitration will address in more detail, the Court's refusal to enforce the Arbitration Agreements was due to language wherein Defendant described how it desired to conduct its business with respect to the Entertainers (i.e., that it desired to treat them as independent contractors and set forth the terms and conditions of their appearances at the Club through licensing and lease agreements).[40] While the Court perceived those

---

[38] D.E. 147 at 12-13.

[39] Order 166 at 18.

[40] D.E. 147 at 3-4. None of the conditions for an Entertainer set forth in the Agreement are inconsistent with a non-employee or independent contractor relationship. For example, Entertainers agree that they may establish their own Performance Fees and retain all fees and gratuities; the Entertainer agrees to retain full independence in exercising judgment as to time and manner of performance, costumes, props or equipment and maintains final control over any aspect of the performance; Entertainer agrees that she shall be paid exclusively from customers of the Club and the Club has no control over the amount of income earned nor any means are taken by the Club to monitor her income, and Entertainer has the right to perform at other clubs or venues. (Def.'s Mt for Summ Judg (D.E. 102-1 at 7, 9);

statements as constituting misleading communications between Defendant and putative class members because it believed those statements implied "that the entertainer's legal status has been decided," Defendant did not state that the issue of whether Plaintiff was an independent contractor or employee had been decided (e.g., on the contrary Defendant indicated that the case was pending before the Court), nor gave any legal guidance on the issue; rather, it simply indicated how it wished to construct its business relationship with the Entertainers.[41]    Defendant contends that the Court materially misapplied Rule 23's requirements by attempting to correct the perceived "misleading" communication through its denial of the Arbitration Motion, which drastically impacted whether the Rule 23 numerosity requirement could be met for class certification, for which an appeal should be granted.    Since the scope, nature and numerosity of the class is dependent upon whether the Arbitration Agreements are enforceable, this Court should grant permission to decide whether Rule 23 Certification is appropriate after considering the District Court's refusal to enforce the Arbitration Agreement, which is already before the Court.

---

Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 3-4.)

[41] Order (D.E. 166) at 17-18; *see also* Def.'s Mt. to Compel Arbitration (D.E. 153, 153-1 through 153-10). Defendant's description of what it would do if it chose to exert control over Entertainers and treat them as employees is not an attempt to mislead about what the law requires. There is nothing unlawful or misleading in Defendant's description of the business relationship it seeks to have with Entertainers.    Defendant has chosen since its inception not to enter into employment relationships with Entertainers, including Plaintiff, contrary to her allegations that she was controlled as an "employee," which will be disproven at trial.

**B.   There is a substantial weakness in the Court's granting of Rule 23 Certification because it relied upon the unfair denial of Defendant's Motion for Certification of Uncertain Issues of State Law and erroneous refusal to consider and grant Summary Judgment of the State Law Claim.**

Plaintiff brought a claim under the SCPWA (S.C. Code Ann. §§ 41-10-10, *et seq.*) for Defendant's inappropriate withholding of her *wages* "[d]ue to Defendant's policy of deducting the *tips* of Plaintiff."[42]

That statute (Section 41-10-40), which is the sole basis for Plaintiff requesting that a Rule 23 class action be certified, states as follows:

> An employer shall not withhold or divert any portion of an employee's *wages* unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of § 41-10-30.

S. C. Code Ann. § 41-10-40 (emphasis added).   The term "tips" is not included in that section of the SCPWA, nor does the Act specifically define "wages" as including "tips."   S. C. Code Ann. §§ 41-10-10, -40.   Instead "wages" is defined as "all amounts . . . which are *due* to an employee under any employer policy or employment contract." S. C. Code Ann. §§ 41-10-10 (emphasis added).[43] Throughout the SCPWA references are repeatedly made to an employer's obligation to "pay all wages *due.*" S.C. Code §§41-10-40(A)-(B), 41-10-50, 41-10-60 (emphasis added).   The repeated use of the term "due" implies wages that are

---

[42] (Am. Compl., D.E. 42, ¶¶ 8, 78-84 (emphasis added).)

[43] The SCPWA does not apply to independent contractors, but only to employees. *See Adamson v. Marianne Fabrics, Inc.*, 301 S.C. 204, 206-07 (1990).

expected by an employee from an employer.

Here, it was undisputed that no wages were paid, "due," or expected from Defendant.[44]   Hence, Defendant sought summary judgment on the claims, although prior to that it sought certification to the South Carolina Supreme Court on the "wages due" issue so South Carolina could clarify the meaning of its law (as opposed to speculation by a federal court on whether the SCPWA is applicable to the undisputed facts).[45]   Defendant sought to certify the following questions:

(1)   Whether S.C. Code Ann. § 41-10-40 prohibiting the withholding or diverting of any portion of an employee's wages is applicable where there is no genuine issue of material fact that there were no wage payments paid or due to the Plaintiff under any Defendant policy or contract; and/or

(2)   Whether S.C. Code Ann. § 41-10-40 prohibiting the withholding or diverting of any portion of an employee's wages is applicable where there are no wage payments paid or due to the employee under any employee policy or contract, and if so, under what circumstances.[46]

In its latest Order denying Defendant's Motions, the Court erroneously ruled that "there was no need to consider the merits of summary judgment on the SCPWA claim because the issue presented was "'purely a question of law.'"[47] However, where a summary judgment motion contains no disputed issue of material fact, there is always purely a question of law, for which it is appropriate and necessary to apply

---

[44]  Def.'s Mt. to Certify Uncertain Questions of State Law Raised in Def.'s Mt. for Summ. Judg. to the South Carolina Supreme Court (D.E. 146) at 4.)
[45]  *See id.*
[46]  *See id.*
[47]  Order (D.E. 166 at 6) (citing ECF. No. 132 at 2)).

the summary judgment standard.[48]   The existence of a purely legal question does

not moot a summary judgment motion.

Additionally, the Court erroneously failed to address the substance of

Defendant's argument that the SCPWA applies only to wages that are "*due* . . . to an

employee under any employer policy or employment contract" and instead limited

its analysis to whether "tips" could be considered wages under the SCPWA, which

was not the subject of Defendant's Motion.[49] The Court cited to another South

Carolina district court's opinion in *Carbone v. China Fun, LLC et al,* No.

2:16-00108 (December 21, 2016), which cited its own earlier opinion on the subject

of tips in this case, for its persuasive authority that tips could be wages.[50]   However,

Defendant's Motion did not seek summary judgment or certification on the "tips"

issue but on whether Plaintiff could establish a SCPWA claim when it was

undisputed that *no wages were due*.[51]   *Carbone* adds no guidance because it was

undisputed in that case that the plaintiff was an employee that was due wages,

whereas here Defendant disputes that Plaintiff was an employee and it is undisputed

that there were no wages *due* to Plaintiff by Defendant.

Summary judgment is not a favored shortcut but is mandated after adequate

time for discovery and upon a Motion against a party who cannot meet the essential

---

[48] *See* Fed. R. Civ. P. 56.
[49] Order (D.E. 166).
[50] *See id.* at 7.
[51] Def.'s Mt. to Certify Uncertain Questions of State Law Raised in Def.'s Mt. for
Summ. Judg. to the South Carolina Supreme Court (D.E. 146) at 5.)

elements of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Thus, Defendant contends that the Court committed error by not considering its Motion for Summary Judgment on the SCPWA claim and abused its discretion by not certifying the uncertain questions of state law to the South Carolina Supreme Court since no Rule 23 class could be certified if the SCPWA claim is not viable.

**C.      There is Substantial Weakness in the Court's Finding that Plaintiff Meets the Requirements for a Class Action under FRCP 23(a).**

Plaintiff failed to meet the requirements of Federal Rules of Civil Procedure 23(a) for numerosity, typicality, and commonality.

**1.      Numerosity.**

Plaintiff failed to offer evidence there are actually "several hundred" Entertainers similarly situated to her and instead only contended that Defendant has the names and addresses of 722 Entertainers.[52] However, Defendant contended those addresses were unreliable and also submitted evidence that 95% of the putative class have chosen not to be treated as employees and to arbitrate disputes instead of joining Plaintiff's lawsuit.[53] Thus, due to the lack of adequate contact information and overwhelming number of Arbitration Agreements, Defendant contended that Plaintiff had not met the numerosity requirement.[54]

A party seeking class certification must do more than plead compliance with

---

[52] Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 16.
[53] D.E. 147 at 12, 16-17.
[54] D.E. 147 at 10-18.

Rule 23(a) requirements. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). Rather, the party *must present evidence* that the putative class complies with Rule 23. *See Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013) (emphasis added). The Court must consider the circumstances of each case in evaluating the practicability of joinder, which "depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion.'" *Mitchell,* 2013 WL 5372776, at*3 (D.S.C. 2013), quoting *George*, 259 F.R.D. at 231 (citations omitted). Plaintiff completely ignored those factors and offered no evidence regarding the reliability of the contact information or the inconvenience of trying individual lawsuits.

Since Plaintiff seeks to bind all Entertainers who ever performed at the Club, those individual class members are entitled to "the best notice . . . practicable under the circumstances, including *individual notice* to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added); *see also Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). However, Plaintiff presented no evidence that there is a reasonably reliable means of ensuring those individuals will receive the notice, instead relying on an assumption that the list of 722 Entertainers' contact information was reliable.[55] However, Defendant contended that the old contact information it gathered solely for purposes of

---

[55] Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 16.

verifying the Entertainers were of legal age at the time they performed was inherently unreliable.[56]  Since lack of individual notice is prejudicial to putative class members that would prefer to opt out but may not have that opportunity, it is also prejudicial to Defendant.[57]

## 2.  **Typicality**.

Rule 23(a)(3) requires that claims or defenses of the representative parties be typical of the claims or defenses of the class (i.e., "[A] class representative must . . . possess the same interest and suffer the same injury as the class members").  *See Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 509-10 (D.S.C. 2007). *Id.* at 510. Since the "representative party's interest in prosecuting her own case must tend to advance the interests of the absent class members . . . . plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of her own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006) *citing Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340-44 (4th Cir. 1998).

---

[56] D.E. 147 at 12, 16-17. Defendant contended the information was provided by Entertainers when they started or, as in the case of Plaintiff—who came to Defendant's Club after it opened as Thee New Dollhouse in March 2012—was forwarded from the previous place she performed (referred to as the Old Dollhouse). Defendant did not verify any of the addresses or contact information of Entertainers and does not ask Entertainers to update that information. It is thus very unlikely that Defendant has addresses that are reliably accurate, especially for those who no longer perform at Defendant's Club. Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 17.
[57] D.E. 147 at 17.

Here, Plaintiff's claims and legal position are substantially different from the majority of the potential class members; thus, her claim is not typical of the class and should not be the basis for a Rule 23 Class Action.[58] *Deiter v. Microsoft Corp.*, 436 F.3d at 467 (*quoting* Fed. R. Civ. P. 23(a)(3).   First, Plaintiff's claims substantially differ from the potential class members since 95% of them have signed Arbitration Agreements along with a license/lease as an independent contractor, which is directly contrary to Plaintiff's claims in that class members would be required to participate in arbitration rather than a lawsuit like Plaintiff brought since she did not sign an Agreement.[59]   *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861-62 (D. Md. 2013) (if certain class members "are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroyed

---

[58] Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 18-22. Typicality is required to ensure that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected" by the name plaintiff and that the "maintenance of a class action is economical." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861-62 (D. Md. 2013).

[59] *See supra* at 6-8; Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 18. "In this case, the members of the current class that are subject to arbitration, forum selection, or class action or jury waiver clauses are *in a different legal position than those class members whose contracts contain no such provisions*. "While the claims of the named Plaintiffs are typical of the class . . . many of the current class members are subject to contractual provisions that expressly foreclose their ability to proceed in this case." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d at 861-62).

the commonality and typicality of the class") (quotations and citations omitted).

Also, Entertainers who performed at the Club did not experience the control by

the Club similar to that asserted by Plaintiff.[60] Highly individualized inquiries

that weigh against a finding of typicality also will be necessary for each potential

class member, including whether each Arbitration Agreements is enforceable,

Defendant's degree of control, and damage calculations (including hours

worked) that would require individualized discovery for each class member

(since most worked intermittently, did not have a set schedule, worked at

different clubs, and worked for varying lengths of time).[61] *See Broussard*, 155

F.3d at 342-44 (individualized damages preclude typicality); *O'Connor v. Uber*

*Techs.*, 2015 U.S. Dist. LEXIS 116482, 124-25 (N.D. Cal. 2015) (individualized

---

[60] Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification (D.E. 147) at 19. Entertainers are not required to tip, and Plaintiff was not typical of most Entertainers.   Plaintiff has provided no evidence that her claims of deductions from wages are "typical" of or similar to theirs.

[61] D.E. 147 at 19-22. This suit is inappropriate for class certification because putative class members who signed the Arbitration Agreements may assert different challenges to their individual Agreements, depending on their educational levels, economic circumstances, and frequency and duration of performances at the Club. *See id*. The determination of whether those Arbitration Agreements are enforceable may include consideration of whether they were obtained by giving each class member an opportunity for private review, to consult an attorney if desired, and to opt-out without undue pressure. The individualized determination of whether each individual Arbitration Agreements is enforceable could diminish the effectiveness of bringing the action as a purported Rule 23 class action.   *Pablo v. ServiceMaster Global Holdings Inc.*, No. C 08-03894, 2011 U.S. Dist. LEXIS 87918 at *6. (N.D. Cal. Aug. 9, 2011).

inquiry necessary to determine validity of arbitration agreements). Further, since Plaintiff has presented no records or any specific amounts of her alleged deductions from wages, typicality is precluded.[62] *See Chao*, 306 F.3d at 183-84.

Although Plaintiff has alleged some issues that are typical of the class (such as they all used to be performers), Defendant has demonstrated that the process of determining if formation of a Rule 23 class is proper will likely be dominated by individual issues in light of Plaintiff's claims that differ from the majority of the class. Therefore, Plaintiff has failed to meet her burden of satisfying this prong of Rule 23(a).

### 3. **Commonality.**

While Plaintiff asserts generally that she has demonstrated commonality because her claims allegedly arise from the same course of conduct as the claims of the class, Defendant contends that individualized inquiries will be necessary to calculate damages because each individual claimant's alleged deductions must somehow be recreated, which will make a class action inefficient and "'inevitably overwhelm questions common to the class.'"[63] *Verma v. 3001 Castor, Inc.*, 2014 WL 2957453, at *15 (E.D. Pa, 2014) (quoting *Behrend*, 133 S.Ct. at 1436). "Commonality requires that there are questions of law or fact common to the class." *George*, 259 F.R.D. at 232. A common question is one that can be resolved for

---

[62] D.E. 147 at 4-5, 19; Def.'s Refiled Mt. for Summ. Judg. (D.E.102-1) at 17-18.
[63] (Pl.'s Memo in Supp. of Mt. for Class Cert., D.E. 139-1, at 18-19; Def.'s Brief in Opp. to Pl.'s Renewed Mt. for Rule 23 Cert. (D.E. 147) at 23-24.)

each class member in a single hearing, such as the question of whether an employer engaged in a pattern or practice of unlawful discrimination against a class of its employees. *See Parks Auto. Grp., Inc.*, 237 F.R.D. at 570 (*citing* 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2005)). A question is not common if its resolution "turns on a consideration of the individual circumstances of each class member." *George*, 259 F.R.D. at 232 (*citing* Charles A. Wright et al., Federal Practice and Procedure § 1763 (3d ed. 2005)); *Boley v. Brown*, 10 F.3d 218, 223 (4th Cir. 1993). "[T]he 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart*, 255 F.3d at 147 n.4 (*quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997).

Plaintiff did not explain how she supposedly proves the alleged deductions but simply makes a conclusory assertion that records exist.[64] However, neither Plaintiff nor Defendant has records specifically showing Tips and/or House Fees paid out by Entertainers; therefore, the Court would have to rely upon each class member's memory and records that were likely not kept and have not been produced in discovery.[65] The analysis would require individual credibility and admissibility determinations on an individual basis for each putative member. The damages sought by Plaintiff(s) do not lend themselves to a simple mathematical calculation

---

[64] *See supra* n. 60.
[65] *See id*.

but will involve proof on a claimant-by-claimant basis where each claimant seems to lack accurate records and would simply have to speculate as to the average amount of tips and House Fees. Over a two or three-year period, this will involve a highly individualized and laborious analysis that is not well-suited for class litigation and will not provide the efficiency intended by Rule 23. *Windham,* 565 F.2d at 68 ("Where the issue of damages and impact does not lend itself to . . . a mechanical calculation, but requires separate mini-trials of . . . individual claims . . . the case [is] unmanageable as a class action.").

**D.    There is a Substantial Weakness in the Court's determination that Plaintiff met Rule 23(b) requirements.**

Plaintiff has not met her burden under Rule 23(b) because highly individualized legal and factual issues predominate over common issues (including individualized calculations of damages as discussed above); therefore, the resolution of common issues in a single proceeding is not superior here to the filing of individual law suits. [66] *Stone*, 139 F.R.D at 33. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites by satisfying: (1) the *predominance* requirement by showing that questions of law or fact common to the class predominate over any questions affecting only individual members, and (2) the *superiority* requirement by showing that a class action is superior to other available methods for the fair and efficient

---

[66] Def.'s Brief in Opp. to Plaintiff's Motion for Rule 23 Class Certification, D.E. 147 at 29-33.

adjudication of the controversy by representation. *See Thomas*, 246 F.R.D. at 514 (*quoting Amchem*, 521 U.S. at 615, 623,); *EQT Prod. Co.,* 764 F.3d at 370-71.

The predominance requirement is "far more stringent than the commonality requirement of Rule 23(a)." *Lott v. Westinghouse Savannah River Co.,* 200 F.R.D. 539, 563 (D.S.C. 2000) (citing *Amchem Prods.,* 521 U.S. at 623-24). A party seeking class certification must do more than plead compliance with the aforementioned Rule 23 requirements. *See Wal-Mart*, 131 S.Ct. at 2551. Rather, the party must present evidence that the putative class complies with Rule 23. *See Behrend*, 133 S.Ct. at 1432. "[T]he mere fact that the defendants engaged in uniform conduct is not, by itself, sufficient to satisfy Rule 23(b)(3)'s more demanding predominance requirement." *EQT Prod. Co.*, 764 F.3d at 366.

Plaintiff failed to demonstrate predominance under Rule 23(b)(3) because a class-wide determination of liability, damages, and defenses (including whether Arbitration Agreements apply to each class member) will be impossible. Defendant has shown that Plaintiff's experience at its Club varies from other Entertainers in many respects. For example, Plaintiff and other Entertainers performed a different number of evenings and hours per workweek, performed a different number of dances, and earned varying amounts of fees and tips from various methods of entertaining, all of which results in a highly-individualized

calculation of damages for each claimant.[67]   The deductions must somehow be re-created for each class member. "Based on the individualized determinations that will be required, the proposed class is not sufficiently cohesive to warrant class adjudication by representation and thus, plaintiffs fail to meet the predominance requirement of Rule 23(b)(3)." *Martin v. JTH Tax, Inc*., 2013 WL 442425, at *8 (D.S.C. 2013); *see Ward v. Dixie Nat'l Life Ins. Co.,* 595 F.3d 164, 180 (4th Cir. 2010) ("individualized damage determinations cut against class certification under Rule 23(b)(3)"); *Pablo*, 2011 U.S. Dist. LEXIS 87918 at *6 (significant part of litigation would be individualized analysis of arbitration agreements instead of resolving plaintiffs' legal claims).

The wide-ranging differences between Plaintiff and the individual Entertainers make this matter improper for Rule 23(b)(3) class treatment.   "[W]hen the defendants' affirmative defenses . . . may depend on facts peculiar to each plaintiff's case [as the Arbitration Agreements at issue here], class certification is erroneous." *Broussard,* 155 F.3d at 342.   Here, class action is not superior to individual claims in this case because too many individual issues must be resolved for each claimant and individual notice to every Entertainer appears unlikely. Thus, Plaintiff's Motion for Rule 23 Class Certification should be denied because she failed to meet her burden of satisfying Rule 23(a) and Rule 23(b)(3) requirements.

---

[67] *See supra* at 14-17. A court should consider merits questions to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013).

## V. CONCLUSION

This Petition should be granted because the Rule 23 class certification ruling: (1) contains substantial weaknesses in its Rule 23 analysis and its reliance on the improper denial of Defendant's Motions to Compel Arbitration and certify SCPWA questions (which might resolve important legal questions and foreclose claims of Plaintiff and any class); (2) substantially alters the litigation's nature and status since denial would result in just one Plaintiff and five FLSA Opt-ins (not 700 class members); and (3) is based upon errors that may cause appeals for discovery, pretrial motions, and trial.

Dated:    February 8, 2017                 Respectfully submitted,

                                          */s/ James L. Holt, Jr.*
                                          James L. Holt, Jr.   (TN Bar #012123)
                                          JACKSON, SHIELDS, YEISER &
                                          HOLT
                                          262 German Oak Drive
                                          Memphis, TN 38018
                                          901-754-8001
                                          901-754-8524 (fax)
                                          *Attorney for Defendant, Crazy Horse*
                                          *Saloon and Restaurant, Inc., d/b/a Thee*
                                          *New Dollhouse*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2017, the foregoing was served by email and Regular U.S. Mail upon opposing counsel of record: T. Christopher Tuck of Richardson, Patrick, Westbrook & Brickman, LLC, ctuck@rpwb.com, 1037 Chuck Dawley Blvd., Bldg. A, Mt. Pleasant, SC 29464; James L. Ward, Jr. of McGowan Hood and Felder LLC, jward@mcgowanhood.com, 321 Wingo Way, Suite 103, Mt. Pleasant, SC 29464; Gary F. Lynch, Edwin J. Kilpela, Jr, and R. Bruce Carlson of Carlson Lynch, PNC Park, 115 Federal Street, Suite 210, Pittsburgh, PA 15212, ekilpela@carlsonlynch.com, glynch@carlsonlynch.com, and bcarlson@carlsonlynch.com; and Jamisen A. Etzel, Carlson Lynch, 1133 Penn Avenue 5th Floor, Pittsburg, PA 15222, jetzel@carlsonlynch.com.